**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**


BRANDEE BUTLER, *ET AL.*                              CIVIL ACTION

versus
                                                     24-cv-162-SDD-EWD
LOUISIANA STATE PENITENTIARY, *ET AL.*


**<u>RULING</u>**

This matter is before the Court on the Rule 12(b)(6) Motions to Dismiss[1] filed by:
(1) Defendants the State of Louisiana, through the Louisiana Department of Public Safety
and Corrections ("DPSC"), Louisiana State Penitentiary ("LSP"), Warden Timothy Hooper
("Warden Hooper"), Liz McGraw ("Chaplain McGraw"), Warden Nicholas Sanders
("Warden Sanders"), and the Louisiana Department of Health ("LDH") (collectively,
"Removing Defendants"); and (2) Defendants Parish Forensics, L.L.C. ("Parish
Forensics") and Amelia Nakanishi ("Dr. Nakanishi").[2]  Defendants argue that the federal
claims asserted by Plaintiffs Brandee Butler ("Butler"), Tomeka Robinson ("Robinson"),
and Kalob Jacquet ("Jacquet"), the surviving children of Eddie Williams, Jr. ("Williams" or
the "Decedent") (collectively, "Plaintiffs") are prescribed.[3]  Defendants further contend
Plaintiffs fail to state constitutional violations against them and that the supplemental state

---

[1] Rec. Docs. 8, 10.
[2] Hereinafter, the Court refers to all defendants collectively as "Defendants."
[3] Rec. Docs. 8-1 at p. 3, 10-1 at p. 5.  Defendants originally asserted that Plaintiffs' claims were
untimely for failure to file suit within one year of Williams' death.  However, Plaintiffs responded
that suit was electronically filed on January 12, 2024, confirmed via fax the same day, and
accepted by the Clerk of Court on January 16, 2024.  Rec. Doc 23-1 at p. 3.  Thereafter,
Defendants withdrew their prescription argument. Rec. Docs. 24 at p. 2, 25 at p. 2. Thus, the
Court need not address the timeliness of Plaintiffs' suit.

law claims should be dismissed.[4]   Alternatively, Defendants seek a more definite statement under Rule 12(e).[5] Plaintiffs submitted a bare-bones Opposition to each motion.[6]  Defendants replied.[7]

For the reasons set forth below, Defendants' Motions to Dismiss[8] shall each be granted in part, and Plaintiffs' federal claims will be dismissed with prejudice.  Further, because the Court declines to exercise supplemental jurisdiction, Plaintiffs' state law claims are dismissed without prejudice.

## I.     FACTS AND PROCEDURAL BACKGROUND

Plaintiffs originally filed this action in the Twentieth Judicial District Court for the Parish of West Feliciana, State of Louisiana.[9]  Plaintiffs filed federal and state claims against Defendants for the death of Williams on January 12, 2023, who was allegedly sleeping when he was attacked, punched, stabbed, beaten, and stomped repeatedly for hours by Inmate Doe.[10]  Williams was an inmate in Camp D of LSP, serving a life sentence for second degree murder.[11] Plaintiffs allege Williams' screams and cries for help went unanswered by an unknown on duty corrections officer.[12]  At 4:00 a.m. on January 13, 2023, the unknown officer came to his cell and found Williams alive but unconscious.[13]  Williams was relocated to the Prison Hospital where he died at around 7:30 a.m.[14]

---

[4] Rec. Docs. 8, 10.
[5] *Id.*
[6] Rec. Docs. 23, 17.
[7] Rec. Docs. 24, 25.
[8] Rec. Docs. 8, 10.
[9] Rec. Doc. 1-3.
[10] Rec. Doc. 1-3, p. 4.
[11] *Id.* at p. 5.
[12] *Id.* at p. 4.
[13] *Id.*
[14] *Id.*

Plaintiffs claim Inmate Doe was a young man with a history of violence and that had been determined not to be suitable to live in the general population.[15] On the day of the attack, Inmate Doe was livid because his mother had died and he was unable to attend the services.[16] Plaintiffs claim that hearing the hopes of Williams for his release caused Inmate Doe to experience explosive emotional outbursts.[17] Plaintiffs claim Inmate Doe recently stabbed another inmate while "on the yard."[18] He was placed in solitary confinement to appear before the Disciplinary Board, who then transferred him to Camp D where he was housed with Williams.[19]

Plaintiffs assert Williams expressed fear for his life to prison officials, and to his family, in his letters, sometimes including requests for administrative transfers to lockdown for his own safety.[20] Williams was allegedly treated with hostility, disdain, and harassment from Correction Officer Blackwell and by other correction officers.[21]

Williams' mother Betty J. Williams ("Betty") was informed of her son's death by her daughter Brandee. Betty then called Chaplain McGraw to inquire about particulars of her son's death, but she was not told how he died, where he died, or how he died.[22] Plaintiffs claim that after multiple phone call attempts, Butler was accidentally transferred to Warden Sanders, who made light of her father's passing and informed her he was killed.[23] Inmate Doe's identity has yet to be disclosed.[24]

---

[15] *Id.* at 5.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* at pp. 5-6.
[23] *Id.* at p. 6.
[24] *Id.*

Plaintiffs claim LSP officials engaged in fraud, collusion, and deceptive practices regarding the particulars surrounding the death of Williams.[25] The family allegedly had to hire a private investigator to obtain any pertinent information and has not been able to secure a Death Certificate.[26] Plaintiffs allege Chaplain McGraw conspired and colluded with officials at Angola to deceive the Williams family into not being able to timely claim his body.[27] Plaintiffs contend Chaplain McGraw knew that if the family did not claim the body at the funeral home it would be returned to Angola where it would be un-ceremonially buried immediately without the family discovering the damage to the body.[28] Plaintiffs allege the family contacted the East Baton Rouge Coroner's office who informed them the body had been transported to Parish Forensics.

Forensic Pathologist Dr. Nakanishi conducted Williams' autopsy at Parish Forensics in Lafayette, Louisiana on January 16, 2023.[29]   Plaintiffs allege that Dr. Nakanishi, an employee of Parish Forensics and governed by LDH, conspired and colluded with the officials at Angola to minimize the impact of the attack on Williams, to mislead the family, because the autopsy diagram has minimal abrasive defensive wounds to his body.[30]

Plaintiffs assert § 1983 claims for violations of the First, Fourth, Eighth, and Fourteenth Amendments against all Defendants.[31]   Plaintiffs also allege a claim for conspiracy under § 1983 against all Defendants.[32]  Plaintiffs also assert claims under the

---

[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.* at pp. 6-7.
[30] *Id.* at p. 7.
[31] *Id.* at p. 7-10.
[32] *Id.*

Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA") (collectively, "ADA/RA") against all Defendants.[33]   Plaintiffs assert state law wrongful death and fraud claims against all Defendants.[34]   Plaintiffs seek compensatory and punitive damages, reasonable attorney fees under 42 U.S.C. § 1988 and 42 U.S.C. § 12205, costs, and legal interest.[35]

With the consent of Parish Forensic and Dr. Nakanishi, Removing Defendants removed under federal question jurisdiction.[36]   Defendants assert Plaintiffs' conclusory allegations fail to state a claim for constitutional violations against them.[37]   In response, Plaintiffs submitted bare-bones Oppositions.[38]   Defendants replied.[39]

## II.      LAW AND ANALYSIS

### A.      Rule 12(b)(6) Motion to Dismiss Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[40] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[41] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[42]

---

[33] *Id.*
[34] *Id.*
[35] *Id.* at p. 34.
[36] Rec. Doc. 1.
[37] Rec. Docs. 8, 10.  Defendants withdrew their prescription argument.  Rec. Docs. 24, 25.
[38] Rec. Docs. 17, 23.  Plaintiffs offer no substantive opposition to Defendants' motions.
[39] Rec. Docs. 24, 25.
[40] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[41] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[42] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In *Bell Atlantic Corporation v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.[43] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[44] A complaint is also insufficient if it merely "tenders 'naked assertions' devoid of 'further factual enhancement.'"[45] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged."[46] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[47] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[48] "On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation."[49]

## B.    Section 1983 Generally

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[50] It

---

[43] *See* 550 U.S. 544 (2007).

[44] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted).

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and brackets omitted).

[46] *Id*.

[47] *Id*.

[48] *Taha v. William Marsh Rice Univ.*, No. H-11-2060, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[49] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[50] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).

provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[51]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[52]

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[53] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[54]

### C.    Plaintiffs Fail to State § 1983 Conspiracy Claims

Removing Defendants seek dismissal of Plaintiffs' § 1983 conspiracy claims.[55] Although the Complaint is unclear, Defendants argue that Plaintiffs make conclusory allegations that Defendants conspired to "deceive the family,"[56] "minimize the impact of the attack,"[57] or "withhold information"[58] from the family of Williams.[59]    Plaintiffs'

---

[51] 42 U.S.C. § 1983.

[52] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).

[53] *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).

[54] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).

[55] Rec. Doc. 8-1 at pp. 8-9.

[56] Rec. Doc. 1-3 at p. 6.

[57] *Id.* at p. 7.

[58] *Id.* at p. 13.

[59] Rec. Doc. 8-1 at p. 9.

Opposition[60] provides no substantive response to these contentions.

Plaintiffs' Complaint alleges Defendants, acting individually and together, conspired to deprive Williams of his constitutional rights, including the right to be free from cruel and unusual punishment, the right to be free from unreasonable searches and seizures, and the right to due process and equal protection of the laws under the First, Fourth, Eighth, and Fourteenth Amendments and Article IV of the United States Constitution and § 1983.[61] Plaintiffs further assert that given Williams' tormented state of mind at the hands of Defendants, he was suffering from a disability in accordance with § 1983 which Defendants failed to accommodate.[62]

Plaintiffs claim Defendants, acting individually and collectively, acted with deliberate indifference to and disregard for Williams' constitutional and civil rights.[63] Plaintiffs allege Defendants had a duty to intervene and prevent the violations of the rights of the decedent, but failed to do so, causing injury and death to Williams.[64]

To establish a conspiracy claim under § 1983, Plaintiffs must show that there was an agreement among Defendants to deprive Williams of his constitutional rights and that such an alleged deprivation actually occurred.[65] Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983.[66] Although the Court accepts well-pleaded facts as true and views them in the light most favorable to the plaintiff, a complaint "that

---

[60] Rec. Doc. 23.
[61] Rec. Doc. 1-3 at pp. 7-8.
[62] *Id.* at p. 8.
[63] *Id.*
[64] *Id.*
[65] *See Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994); *Est. of Farrar v. Cain*, 941 F.2d 1311, 1313 (5th Cir. 1991); *Jabary v. City of Allen*, 547 F.App'x 600, 610 (5th Cir. 2013).
[66] *See Arsenaux v. Roberts*, 726 F.2d 1022, 1023–24 (5th Cir. 1982).

offers labels and conclusions" or "naked assertions devoid of further factual enhancement" is not plausible for purposes of Rule 12(b)(6).[67] Therefore, to establish Plaintiffs' conspiracy claim, they must plead specific, nonconclusory facts that establish that there was an agreement among Defendants to violate his federal civil rights.[68]

Plaintiffs have not done that here. Plaintiffs' Complaint lacks any specific facts that there was any agreement between Defendants to deprive Williams of his constitutional rights. Thus, Plaintiffs fail to state a plausible claim for conspiracy under § 1983 against Defendants.

### D.    Plaintiffs Fail to State a Claim for Private Entity Liability under § 1983

Dr. Nakanishi and Parish Forensics assert Plaintiffs fail to allege they are state actors sufficient to state a claim under § 1983.[69] Dr. Nakanishi and Parish Forensics contend Plaintiffs' only allegation pertaining to such a relationship is the allegation that they are governed by LDH.[70] However, they assert this is insufficient to transform their acts into state action.[71] Further, Dr. Nakanishi and Parish Forensics contend that the only act of governance LDH may exert is in the form of licensure to practice or operate in compliance with applicable health standards.[72] Dr. Nakanishi and Parish Forensics argue that Plaintiffs offer no factual support to substantiate that the state entered a joint enterprise with them, or exerted any influence over them.[73] Thus, Dr. Nakanishi and

---

[67] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (internal quotation marks and brackets omitted) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

[68] *See Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir. 2004) ("Allegations that are merely conclusory, without reference to specific facts, will not suffice" to establish a § 1983 conspiracy claim).

[69] Rec. 10-1 at p. 8.

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Id.*

Parish Forensics assert Plaintiffs fail to state § 1983 claims against them.[74]

Plaintiffs respond that the assertions by Dr. Nakanishi and Parish Forensics are premature, and Plaintiffs seek time for additional discovery as to whether they are state actors.[75]  Further, Plaintiffs argue that Dr. Nakanishi's and Parish Forensics' contentions as to failure to state claims under the ADA/RA are immaterial.[76] However, Plaintiffs go on to state that their claims against Dr. Nakanishi and Parish Forensics are solely premised on state law fraud, as their involvement was post-mortem.[77]  Plaintiffs contend that their involvement consisted of fraudulently manipulating the autopsy diagram and procedure in order to minimize the impact of the attack on Williams.[78] Plaintiffs state that the claims against Dr. Nakanishi and Parish Forensics are not premised under a federal statute and they need not be a state actor.[79]  Plaintiff offers no additional authority, facts, or supporting argument beyond this response.

"[F]or a plaintiff to state a viable claim under § 1983 against any private defendant, . . .  the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law."[80]

Here, Plaintiffs offer no substantive response to the contentions of Dr. Nakanishi and Parish Forensics. Although Plaintiffs' First Cause of Action globally references "defendants" pertaining to conspiracy allegations for violations of federal statutes, Plaintiffs concede that they do not state federal claims against Dr. Nakanishi and Parish

---

[74] *Id.*
[75] Rec. Doc. 17 at p. 3.
[76] *Id.* at p. 4.
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001).

Forensics.[81]  Thus, to the extent Plaintiffs' Complaint could be construed to assert federal claims against Dr. Nakanishi and Parish Forensics, and considering Plaintiffs' clarification and concession that they assert only state law claims against them, Dr. Nakanishi's and Parish Forensics' motion is granted in part and any federal claims against them are dismissed with prejudice.

### E.    Plaintiffs Fail to State Claims under § 1983 Against Removing Defendants

Plaintiffs assert § 1983 claims for violations of the First, Fourth, Eighth, and Fourteenth Amendments.[82]  Removing Defendants seek dismissal of those claims against them for failure to state a claim for relief.[83]

Plaintiffs assert "Defendants" deprived Williams of his constitutional rights, including the right to be free from cruel and unusual punishment, the right to be free from unreasonable searches and seizures, and the right to due process and equal protection of the laws under the First, Fourth, Eighth, and Fourteenth Amendments and Article IV of the United States Constitution.[84]  Plaintiffs further allege Defendants' customs, polices, patterns, and practices deprived Williams' civil and constitutional rights in violation of the First, Fourth, Eighth, and Fourteenth Amendments.[85] Plaintiffs allege Defendants did so with deliberate indifference to the rights of inmates in their care, custody, and control, particularly Williams.[86]  Plaintiffs further allege Defendants, including Warden Hooper, failed to protect Williams from Inmate Doe.[87] Plaintiffs claim Defendants failed to properly

---

[81] Rec. Doc. 1-3. at p. 4.
[82] *Id.* at pp. 7-9, 24.
[83] Rec. Doc. 8-1 at pp. 4-9.
[84] *Id.* at p. 28.
[85] *Id.*
[86] *Id.* at p. 29.
[87] *Id.* at p. 10

monitor Williams, confining him in unsafe, unreasonable, and unsafe conditions by locking him in a cell, knowing harm would likely come to him.[88]  Plaintiffs assert Wardens Hooper and Sanders are vicariously liable in their official capacity for the actions of the employees of LSP and LDPSC.[89]

Plaintiffs' Complaint, however, does not clearly set forth claims or sufficient factual allegations under each amendment and as to each Defendant. Plaintiffs offer no substantive Opposition to the motion, merely devoting two paragraphs to Removing Defendants contentions.[90]  Plaintiffs simply contend the motion is premature.[91] Plaintiffs' failure to adequately brief or substantively oppose dismissal of their federal claims alone is grounds for the Court to determine Plaintiffs have waived their claims and dismiss them.[92]

---

[88] *Id.*

[89] *Id.*

[90] Rec. Doc. 23-1 at p. 4.

[91] *Id.*

[92] *See Gray v. City of Denham Springs*, 2021 WL 1187076, at *5 (M.D. La. Mar. 29, 2021); *Jordan v. Gautreaux*, 2022 WL 897549, at *15 n.2 (M.D. La. Mar. 25, 2022) (deeming claims waived for failure to substantively oppose dismissal of the claims); *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (stating that, "[t]o avoid waiver, a party must identify relevant legal standards and any relevant Fifth Circuit cases."). The Court's local rules also require parties support their arguments with "a concise statement of reasons . . . and citations of authorities."  M.D. La. LR 7(d).  The parties do not directly address Plaintiffs' alleged claims under the Fourteenth Amendment.  However, Defendants seek dismissal of all federal claims against them and Plaintiffs' Complaint contains no allegations under the Fourteenth Amendment other than a mere reference to the amendment.  As discussed herein, Plaintiffs waived those claims in failing to substantively oppose their dismissal and, to the extent it may be construed to include a Fourteenth Amendment claim, it is dismissed.  As to Plaintiffs' claims under the First, Fourth, and Eighth Amendments briefed by Removing Defendants, the Court deals with those in turn.

1.    **Plaintiffs fail to state claims against DPSC, LSP, and LDH as "state actors" under § 1983.**

Removing Defendants contend that DPSC, LSP, and LDH are not "persons" under § 1983.[93]  Thus, Removing Defendants argue Plaintiffs cannot state plausible § 1983 claims against them.[94]

Plaintiffs respond that Removing Defendants' motion is premature and that they be allowed adequate time to conduct discovery and amend their Petition accordingly.[95] Plaintiffs otherwise fail to substantively address Defendants' assertions that DPSC, LSP, and LDH are not "persons" under § 1983.

Still, to establish a claim under § 1983, Plaintiffs must prove that a *person* acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[96]  Here, the United States Court of Appeals for the Fifth Circuit has held that DPSC and LSP are not "persons" under § 1983.[97]  Further, LDH is an arm of the state and is protected by Eleventh Amendment immunity.[98]  Congress has not abrogated the State's sovereign immunity from suit in federal court for claims arising under § 1983.[99]  And Plaintiffs fail to support their claims that DPSC, LSP, or LDH are state actors under § 1983.  Thus, Plaintiffs fail to state cognizable federal constitutional

---

[93] Rec. Doc. 8-1 at p. 4.
[94] *Id.* at p. 5.
[95] Rec. Doc. 23-1 at 4.
[96] *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).
[97] *See Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) ("The State and [Department of Public Safety and Corrections] are not persons . . . .").
[98] *See Montgomery-Smith v. Louisiana Dep't of Health and Hospitals*, 299 F.Supp.3d 790, 807 (E.D. La. Mar. 2, 2018) ("For the purpose of sovereign immunity, DHH, a Louisiana state agency, is considered an 'arm of the state' and, therefore, protected by the Eleventh Amendment.") (citation omitted); *see also Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).
[99] *Montgomery-Smith*, 299 F.Supp.3d at 807; *see also Edelman*, 415 U.S. at 662-63.

claims under § 1983 against DPSC, LSP, or LDH and those claims are dismissed with prejudice.

### 2. Plaintiffs Fail to State § 1983 Claims Against Warden Hooper, Warden Sanders, and Chaplain McGraw

#### a. First and Fourth Amendments

Removing Defendants contend Plaintiffs merely allege conclusory statements that all Defendants violated Williams' First and Fourth Amendment Rights.[100]   Removing Defendants contend there is no factual support for these claims, and they should be dismissed.[101]

Again, Plaintiffs fail to substantively oppose dismissal of these claims against Defendants.  Consequently, Plaintiffs' First and Fourth Amendment claims are waived.[102] Nevertheless, Plaintiffs' Complaint fails to allege any factual support for a First and Fourth Amendment claim, other than raising the amendments in name alone.  Thus, Plaintiffs' claims under the First and Fourth Amendment are dismissed with prejudice.

#### b. Eighth Amendment

3𝒸𝓱 𝒥𝒬𝒯𝐵 Defendants seek dismissal of the individual Defendants for lack of any factual support in the Complaint that any Defendant violated Williams' constitutional rights.[103]   Defendants contend Plaintiffs fail to allege Warden Hooper was personally involved in the alleged constitutional violations.[104]   Defendants argue Plaintiffs cannot assert a claim for vicariously liability against Warden Hooper.[105] Further, Defendants

---

[100] Rec. Doc. 8-1 at p. 9.
[101] *Id.*
[102] *See JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016).
[103] Rec. Doc. 8-1 at p. 5.
[104] *Id.* at p. 6.
[105] *Id.*

assert Plaintiffs make conclusory allegations that Warden Hooper established policies that caused the deprivation of Williams' constitutional rights.[106] Defendants contend Plaintiffs' allegations lack factual support that Warden Hooper implemented unconstitutional policies that causally resulted in a constitutional injury or that Warden Hooper was aware of a substantial risk of harm.[107] And Defendants contend there is no factual support for the necessary "pattern" of similar instances.[108]    Specifically, Defendants state that at best, the Complaint alleges that Inmate Doe had one prior altercation with another inmate and was released back into Camp D after he was sentenced to solitary confinement.[109]

Once again, Plaintiffs fail to substantively oppose dismissal of their Eighth Amendment claims.  Consequently, Plaintiffs' Eighth Amendment claims are waived.[110] Still, Plaintiffs also fail to plausibly allege claims against Warden Hooper, Warden Sanders, or Chaplain McGraw under the Eighth Amendment.

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.[111] Although prison officials generally "have a duty . . . to protect prisoners from violence at the hands of other inmates,"[112] "[p]rison officials are not . . . expected to prevent all inmate-on-inmate violence."[113]  "Deliberate indifference" is the standard applied in evaluating a failure to protect claim.  This term has

---

[106] *Id.* at p. 7.
[107] *Id.*
[108] *Id.*
[109] *Id.*
[110] *See JTB Tools & Oilfield Servs. L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016)
[111] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).
[112] *Farmer*, 511 U.S. at 833.
[113] *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

been defined as including an element of "subjective recklessness" as used in criminal law.[114]

To establish a violation of this duty, the prisoner must show that prison officials were deliberately indifferent to serious threats to the inmate's safety.[115] To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."[116] Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed.[117]  But there must exist an intent on the part of the prison official to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm.[118]  Mere negligence or "failure to alleviate a significant risk that [the official] should have perceived but did not" are insufficient to establish a failure to protect claim.[119]  Moreover, deliberate indifference requires a level of awareness of a specific risk based upon specific information, such that general knowledge of possible dangerousness or the like is not enough to support a failure to protect claim.[120]

"[Plaintiffs] must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation

---

[114] *Id.*
[115] *Farmer*, 511 U.S. at 834.
[116] *Id.* at 837.
[117] *Id.* at 843.
[118] *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986).
[119] *Farmer*, 511 U.S. at 837; *see also Domino v. Texas Dept. of Crim. Jus.*, 239 F.3d 752, 756 (5th Cir. 2001) (citing *Farmer*, 511 U.S. at 838)).
[120] *Walker v. Davis*, 2019 2465298, at *8 (E.D. Tex. Jan. 10, 2019).

Page **16** of 22

alleged."[121]   Any allegation that the defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* alone is insufficient to state a claim under § 1983.[122]   Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.[123]

Here, Plaintiffs state that Defendants, "individually and collectively, acted negligently, with gross negligence and intentionally in denying reasonable and necessary protection to [Williams], from the mentally ill and violent Inmate Doe[.]"[124] Plaintiffs allege Inmate Doe terrorized and tormented him and that Williams warned Defendants LSP, DPSC, Warden Hooper, and Warden Sanders.[125]   Plaintiffs allege Defendants failed to properly monitor Williams, confining him in unsafe, unreasonable, and dangerous conditions by locking him in a cell, knowing that harm was likely to come to him and in inflicting physical injury and severe emotional, mental, and physical pain and suffering .[126]

However, Plaintiffs do not allege that any of the Defendants had specific, actual knowledge that Inmate Doe presented a substantial risk to Williams's safety.   Plaintiffs

---

[121] *See Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

[122] *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (*citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability")).

[123] *Lozano v. Smith*, 718 F.2d 756, 768. (5th Cir. 1983).

[124] Rec. Doc. 1-3 at p. 30.

[125] *Id.*

[126] *Id.*

fail to allege additional details regarding the personal involvement of Warden Hooper, Warden Sanders, or Chaplain McGraw in the death of Williams.  Moreover, the allegations against Chaplain McGraw took place after Williams' death, and consequently, after the alleged constitutional violations.

Further, Plaintiffs make claims against Warden Hooper and Warden Sanders for deliberately indifferent patterns and practices in their official capacities.[127]  Plaintiffs make general assertions collectively against Defendants for allegedly unconstitutional policies, patterns, and practices.[128]  But Plaintiffs fail to provide factual support that any of the individual Defendants established any policies, or that any policies were so deficient that the policy itself is a denial of constitutional rights.  Thus, Plaintiffs fail to state claims against Warden Hooper or Warden Sanders for supervisory liability.

**F.    Plaintiffs fail to state ADA/RA Claims Against Defendants.**

Defendants seek dismissal of Plaintiffs' claims under the ADA/RA.[129]  Defendants contend that the Complaint is devoid of any allegations or fact to support a claim under the ADA or RA.[130]  Defendants argue that Williams does not allege that he was a qualified individual with a disability, or that he was excluded from any service or program by reason of any disability.[131]   Defendants argue Plaintiffs fail to allege that Williams was discriminated against because of a qualified disability.[132] Further, Defendants assert Plaintiffs cannot state an ADA/RA claim against individual defendants.[133]  Thus,

---

[127] *Id.*
[128] Rec. Doc. 1-3 at p. 28.
[129] Rec. Docs. 8-1 at p. 9, 10-1 at p. 9.
[130] *Id.*
[131] Rec. Doc. 8-1 at p. 11.
[132] *Id.*
[133] *Id.*

Defendants contend that any such claims against Warden Hooper, Warden Sanders, or Chaplain McGraw should be dismissed.[134]  Defendants also assert that Plaintiffs provide no facts to suggest the ADA/RA applies to the actions of Dr. Nakanishi and Parish Forensics.[135]  As already noted herein, Plaintiffs provide only generic responses in opposition.[136]

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[137]  A plaintiff must show "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability."[138] To have a qualifying disability, a plaintiff must demonstrate "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[139]

The elements necessary to plead a cause of action of disability discrimination under the RA and the standards governing such claims are "operationally identical" to

---

[134] *Id.*
[135] Rec. Doc. 10-1 at p. 9.
[136] Rec. Docs. 17, 23-1.
[137] 42 U.S.C. § 12132.
[138] *Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011).
[139] *Id.* at 499–500 (internal quotations omitted).

those required to state a claim under the ADA.[140] "The only material difference between the two provisions lies in their respective causation requirements."[141]

Further, under the ADA, a plaintiff may assert a claim for failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual."[142] To survive a motion to dismiss, a plaintiff bringing a failure-to-accommodate claim must sufficiently plead that (a) he is a qualified individual with a disability; (b) the disability and its consequential limitations were known by the covered entity; and (c) the entity failed to make reasonable accommodations.[143]

Title II prohibits discrimination by "public entities,"[144] and state punitive institutions fall squarely within this statutory definition.[145]  However, the Fifth Circuit has held that plaintiffs cannot sue defendants in their individual capacity under the ADA or RA.[146]  Thus, Warden Hooper, Warden Sanders, Chaplain McGraw, and Dr. Nakanishi cannot be held liable in their individual capacities under the ADA or RA.

Further, Plaintiffs make a general, conclusory allegation that he suffered from a disability.[147]  Plaintiffs allege that Williams requested Administrative Transfers to Lockdown for his own safety.[148]  Plaintiffs claim Williams was terrified and was terrorized

---

[140] *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004); *see also Sligh v. City of Conroe*, 2023 WL 8074256, at *7-8 (5th Cir. Nov. 21, 2023).
[141] *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).
[142] 42 U.S.C. § 12112(b)(5)(A).
[143] *Sligh*, 2023 WL 8074256, at *7 (citing *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015).
[144] 42 U.S.C. § 12131(1).
[145] *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).
[146] *Lollar v. Baker*, 196 F.3d 603, 608-09 (5th Cir. 1999) (holding employee of entity receiving federal assistance could not be held individually liable under RA); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (5th Cir. 1999) (en banc) (endorsing appellate panel's conclusion that defendants "may not be sued in their individual capacities directly under the provisions of Title II [of the ADA].").
[147] Rec. Doc. 1-3 at p. 8.
[148] *Id.* at p. 5.

by the official's refusal to grant him protective relief.[149] Plaintiffs assert Williams was treated with hostility, disdain, and harassment from correction officer Blackwell and other correction officers.[150] Plaintiffs allege that very fate that Williams feared was manifested, just as he had expressed to the authorities at the LSP.[151] Plaintiffs further allege LSP, Warden Sanders, On-Duty Corrections Officer, CO Doe #1, and CO Doe #2 failed to attend to the concerns expressed by the decedent, for his welfare and safety, and failed to respond to his cries for help as he was being bludgeoned.[152] Plaintiffs further allege that, "given the decedent[sic], tormented state of mind at the hands of the defendants, he was clearly suffering from a disability in accordance with 42 U.S.C. §12132, for which the Defendants provided no accommodations as he had requested."[153] The Complaint, however, contains no other allegations as to disability.

Although state prisons are subject to the ADA,[154] Plaintiffs here make no attempt to sufficiently allege the elements of an ADA/RA claim.  Plaintiffs fail to provide specific facts that give rise to the reasonable inference that Removing Defendants "intentionally discriminated against [Williams] because of any disability."[155]

Because Plaintiffs fail to state a claim for relief under the ADA/RA, Defendants' Motions to Dismiss[156] are granted in part.

---

[149] *Id.*
[150] *Id..*
[151] *Id.*
[152] *Id.* at p. 7.
[153] *Id.* at p. 8.
[154] *See Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999).
[155] Rec. Doc. 1-3 at p. 8.
[156] Rec. Docs. 8, 10.

### G.    State Law Claims

Plaintiffs also assert state law claims for the wrongful death of Williams and for fraud.[157]   A district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the Court has original jurisdiction, if the Court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[158]

Here, having determined Plaintiffs fail to allege plausible federal claims, the Court declines supplemental jurisdiction over Plaintiffs' potential state law claims.

## III.    CONCLUSION

Accordingly,

Defendants' Motions to Dismiss[159] each are hereby **GRANTED IN PART**, and Plaintiffs' federal claims against Defendants are **DISMISSED WITH PREJUDICE**. Moreover, the Court hereby declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, and they are **DISMISSED WITHOUT PREJUDICE**.[160]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this  2nd  day of December, 2024.

_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[157] Rec. Doc. 1-3 at pp. 31-32.
[158] 28 U.S.C. § 1367.
[159] Rec. Docs. 8, 10.
[160] 28 U.S.C. § 1367.